**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STEVE GOMEZ,<br>CDCR #AG-3761,<br><br>                                    Plaintiff,<br><br>         vs.<br><br>DEPUTY CARPENTER,<br><br>                                    Defendant. | Civil No.   11cv0012 BTM (JMA)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED.R.CIV.P. 56(c)**<br><br>**(ECF No. 40)** |

**I.     Procedural Background**

Steve Gomez ("Plaintiff"), a state prisoner incarcerated at Calipatria State Prison located in Calipatria, California, is proceeding pro se and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983.

Initially, Plaintiff named the County of San Diego, "Encinitas Sheriff's," John Doe #1 and the San Diego Sheriff's Office" as Defendants in this matter. (*See* ECF No. 1 at 1-2.) The Court initially dismissed Plaintiff's original Complaint with leave to amend. (ECF No. 3.) Plaintiff later filed a First Amended Complaint. (ECF No. 17.) The Court conducted the required sua sponte screening, found the excessive force claims against Defendant Carpenter survived the sua sponte screening process, dismissed all the remaining Defendants and directed the United States Marshal's Service to effect service on Defendant Carpenter. (ECF No. 18.)

/ / /

Defendant Carpenter filed his Answer to Plaintiff's First Amended Complaint on January 4, 2012. (ECF No. 21.) He now moves for summary judgment pursuant to FED.R.CIV.P. 56. (ECF No. 40.) Defendant and the Court have provided Plaintiff with notice of the requirements for opposing summary judgment pursuant to *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988) and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc) (ECF Nos. 40-6, 41). Plaintiff filed his Opposition to Defendant's Motion to which Defendant has filed a Reply. (ECF Nos. 52, 53.)

**II.     Factual Background**

   **A.     Plaintiff's factual allegations**

On July 3, 2010, Plaintiff was driving a green Ford Explorer when San Diego Deputy Sheriff Carpenter began chasing him with a patrol car. (*See* FAC at 4, 10.) During this chase, Plaintiff crashed into a concrete median on the freeway. After his car came to a stop, Plaintiff claims Defendant Carpenter "accelerated his patrol car" causing it to crash in the driver's side door of Plaintiff's car. (*Id.* at 11.) While Defendant Carpenter claims that "from 30 feet away" he could see Plaintiff "bend forward and reach for something underneath my person, and also reach underneath my seat for an unknown object," Plaintiff claims that never occurred. (*Id.*) Plaintiff alleges that he "never made any kind of movement" because when he "lost control of [his] vehicle and "collided" into a concrete barrier, the air bag deployed causing him to become "wedged" between the air bag and his seat. (*Id.*)

Plaintiff claims that Defendant Carpenter collided into his car with such force it caused him to "almost" be pushed "out the passenger side door." (*Id.* at 12.) Defendant Carpenter allegedly pointed his handgun at Plaintiff and "ordered him to the ground." (*Id.* at 13.) Plaintiff claims he complied with this order. (*Id.*) Plaintiff alleges that Defendant "grabbed Plaintiff by the shirt and slammed him face first into the concrete." (*Id.*) This was followed by Defendant Carpenter allegedly proceeding to "[jump] on Plaintiff's back," striking Plaintiff "on the head and face area with his handgun a few times." (*Id.*) Plaintiff alleges Defendant Carpenter kept shouting to him "where is the gun" multiple times. (*Id.*) Plaintiff claims that he never had a gun either on his person or in his car. (*Id.*)

### B.     Defendant's Response

On July 3, 2010, Defendant Carpenter was a Deputy Sheriff with the San Diego County Sheriff's Department working from the Encinitas station. (Declaration of Matthew Carpenter, ECF No. 40-2, at ¶1.)  On this day, Defendant Carpenter was "working traffic duty in a patrol car." (*Id.* at ¶ 2.)  Defendant Carpenter alleges that he had heard a report about a "person who had been brandishing a weapon" and thereafter, he heard on the radio dispatch that a "green Ford Explorer was being pursued by Deputy Dunford." (*Id.*)  Soon thereafter, he saw a green Ford Explorer pass him on the interstate as another Sheriff's patrol car driven by Deputies Billieux and Longfellow pulled up next to the Ford Explorer. (*Id.* at 3.)  Defendant Carpenter claims the Ford Explorer swerved into the lane with the patrol car driven by the other Deputies in an attempt perceived by Defendant Carpenter "to cause a crash or kill the deputies in the car." (*Id.*)  The Ford Explorer "went out of control, struck another vehicle then crashed into the median barrier adjacent to the fast lane." (*Id.*)

Defendant Carpenter declares that he activated the emergency lights and sirens on his car and positioned it to "block the fast lane near the Ford Explorer" approximately twenty five (25) feet from the Explorer.  (*Id.* at 4.)  Defendant Carpenter declares that he saw Plaintiff "reach down for something in the area of his seat" which caused him to fear that Plaintiff was "attempting to reach a gun so he could shoot me." (*Id.*)  Defendant Carpenter claims that he feared for his life and "the safety of others" so he decided to intentionally collide into the Plaintiff's Ford Explorer with his patrol car to stop Plaintiff from retrieving a weapon. (*Id.* at ¶ 5.)

Defendant Carpenter claims he drew his gun, pointed it at Plaintiff and "shouted for him to get to the ground." (*Id.* at ¶ 6.)  Instead, Plaintiff "jumped over the concrete median divider and ran through the bushes in the median." (*Id.*)  According to Defendant Carpenter, Plaintiff had his "right hand near his waistband." (*Id.*)  Defendant Carpenter had been trained that the "waistband is an area where a fleeing felon could [be] carrying a gun." (*Id.*)

/ / /

/ / /

Even after Defendant Carpenter identified himself to Plaintiff as a Deputy Sheriff and told him he would "shoot if he did not get down on the ground," Plaintiff continued to flee. (*Id.*) Defendant Carpenter eventually caught up with Plaintiff, "grabbed him by the back of his shirt and pushed him front-first onto the ground to take him into custody." (*Id.*) Defendant Carpenter placed his knee in the middle of Plaintiff's back, "shouted to ask where the gun was," and told Plaintiff to put his hands behind his back. (*Id.*) Deputy Longfellow handcuffed Plaintiff. Defendant Carpenter declares he is "certain that I never struck Gomez in the face or head with my handgun." (*Id.* at ¶ 7.)

### III. Defendant's Motion For Summary Judgment

#### A. FED.R.CIV.P. 56 Standard of Review

Rule 56(a) provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Nat'l Ass'n of Optometrists & Opticians v. Harris,* 692 F.3d 1144, 1147 (9th Cir. 2012)(quoting FED.R.CIV.P. 56(a)); *see also Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED.R.CIV.P. 56(c)); *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted).

If the moving party meets its initial responsibility, the burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Bias*, 508 F.3d at 1218. To avoid summary judgment, the non-moving party is "required to present significant, probative evidence tending to support h[is] allegations," *Bias*, 508 F.3d

at 1218 (citations omitted), and must point to some evidence in the record that demonstrates "a genuine issue of material fact [which], with all reasonable inferences made in the plaintiff[]'s favor, could convince a reasonable jury to find for the plaintiff[]." *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000) (citing FED.R.CIV.P. 56; *Celotex*, 477 U.S. at 323). "The substantive law determines which facts are material; only disputes over facts that might affect the outcome of the suit under the governing law properly preclude the entry of summary judgment." *Nat'l Ass'n of Optometrists*, 682 F.3d at 1147 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The opposing party cannot rest solely on conclusory allegations of fact or law. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Instead, to demonstrate a genuine issue requiring trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 587 (citation omitted).

The evidence of the opposing party is to be believed. *See Anderson*, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Matsushita*, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

**B.   Defendant's Arguments**

Defendant Carpenter seeks summary judgment of Plaintiff's excessive force claims which are the only remaining claims in this action.[1]

///

///

---

[1] In his First Amended Complaint, Plaintiff characterizes his excessive force claims as arising under the Eighth Amendment. (*See* FAC at 3-4, 10.) However, Plaintiff was not a prisoner at the time of the incidents which are the subject of this action. Accordingly, it is the Fourth Amendment, not Eighth Amendment, which applies to these facts. *See Bell v Wolfish*, 441 U.S. 520, 535 n.16 (1979) ("Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions. . . . [and] the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.")

### C. Fourth Amendment excessive force claims

The Supreme Court has held that the use of deadly force is a "seizure" subject to Fourth Amendment inquiry. *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). "Claims of excessive and deadly force are analyzed under the Fourth Amendment's reasonableness standard." *Long v. City and County of Honolulu*, 511 F.3d 901, 906 (9th Cir. 2007) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). In determining whether the force used by Defendant Carpenter was "objectively reasonable" as "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," the Court must consider several factors. *Graham*, 490 U.S. at 396-97. The Court must consider the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. The Supreme Court has most recently emphasized that courts "must still slosh [their] way through the factbound morass of 'reasonableness.' Whether or not [defendant's] actions constituted application of 'deadly force,' all that matters is whether [the defendant's] actions were reasonable." *Scott v. Harris*, 550 U.S. 372, 383 (2007).

Here, the Court finds that in this case, even assuming all facts in the record in Plaintiff's favor, no genuine issues of material fact exist to show that Defendant Carpenter used unreasonable or unnecessary force under the circumstances.

#### 1. *Severity of the crime*

When the events that give rise to this action began, Defendant Carpenter heard a report over the radio that there was a suspect brandishing a weapon. (*See* Carpenter Decl. at ¶ 2.) Defendant Carpenter believed that when he saw Plaintiff's green Ford Explorer being followed by other Sheriff Deputies that this was the suspect who had been brandishing a weapon. (*Id.*) Even though Plaintiff argues that Defendant Carpenter's claim that he thought Plaintiff was the suspect brandishing a weapon is "conclusory, speculative and [has] no supporting evidence," his own allegations support Defendant Carpenter's claim that he believed Plaintiff had a weapon. In his First Amended Complaint, Plaintiff alleges that Defendant Carpenter shouted to him multiple times "where is the gun, where is the gun?." (FAC at 13.) Plaintiff offers no evidence

to contradict Defendant Carpenter's assertion that he had reason to believe Plaintiff had a weapon at the time he used his patrol car to hit Plaintiff's car and during the arrest that followed.

It was later determined that Plaintiff was not the suspect who was seen brandishing a weapon. Rather Plaintiff was being followed by Sheriff Deputies because after Plaintiff had stolen construction tools from a residence, he fled from these Sheriff Deputies who had attempted to pull him over in his car. (Pl.'s Depo at 12:13-15; Def.'s Ex. 3, Declaration of Deputy W. Dunford dated July 3, 2010.) Plaintiff ultimately plead guilty to burglary in the first degree in violation of California Penal Code § 459 and evading an officer with reckless driving in violation of California Vehicle Code § 2800.2(a). (*Id.* at 14:5–15.) Burglary is a serious felony in California. *See Lopez-Cardona v. Holder*, 662 F.3d 1110, 1112 (9th Cir. 2011) (burglary under California Penal Code § 459 constitutes a crime of violence because it is a felony "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."). In addition, in order to be found guilty of a violation of California Vehicle Code § 2800.2 it requires a finding that the person fleeing or attempting to elude a pursuing peace officer is driving the pursued vehicle "in a willful or wanton disregard for the safety of persons or property." Cal. Vehicle Code § 2800.2(a).

Based on the fact that Plaintiff plead guilty to both crimes, the Court finds that the severity of the crimes committed by Plaintiff weigh heavily in favor of Defendant Carpenter.

2.   *Immediate threat to the safety of officers or others*

The Ninth Circuit has held that "[u]ltimately, the 'most important' *Graham* factor is whether the suspect posed an 'immediate threat to the safety of the officers or others.'" *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (citations omitted.). There is no dispute that Defendant Carpenter intentionally drove his patrol car into Plaintiff's car after Plaintiff had crashed his vehicle into the median which divided the northbound and southbound traffic on the freeway. (*See* Carpenter Decl. at ¶ 5.) Defendant Carpenter claims that he stopped his patrol vehicle approximately twenty five (25) feet away from Plaintiff's car after it had crashed and he saw Plaintiff "reach down for something in the area of his seat." (*Id.* at ¶ 4.) Defendant

1  Carpenter believed that Plaintiff "was attempting to reach a gun so he could shoot me" and
2  therefore, he intentionally collided with Plaintiff's car to "stop [Plaintiff] from getting a weapon
3  and using it to try to kill me." (*Id.* at ¶¶ 4, 5.) Plaintiff argues that any claims he was reaching
4  for a gun are "speculative, conclusory, and has no supporting evidence." (Pl.'s Opp'n at 6.)
5  However, Plaintiff's own testimony provides the evidence supporting Defendant Carpenter's
6  belief that Plaintiff was reaching down for an object after the crash. Specifically, Plaintiff
7  testified that after his car crashed into the median, he was reaching down to his waist area to
8  remove the seat belt from the buckle and it took at least two tries to remove the seatbelt. (*See*
9  Pl.'s Depo at 40:11-23.)   Therefore, despite Plaintiff's own conclusory arguments, he has
10 provided no evidence to contradict Defendant Carpenter's belief that Plaintiff was reaching
11 downward towards his waist area after he had crashed into the median.

12       Throughout the entire incident, from the time the car chase began to the time of Plaintiff's
13 arrest, there is ample evidence before this Court to determine that it is undisputed that Defendant
14 Carpenter reasonably believed that Plaintiff had a gun. As stated above, Plaintiff alleges in his
15 First Amended Complaint and in his Deposition that Defendant Carpenter repeatedly said to
16 Plaintiff's "where is the gun?." (FAC at 13, Pl.'s Depo at 50:1-2.) Plaintiff's own evidence and
17 allegations supports this conclusion rather than raising a triable issue of material fact.

18       Moreover, Plaintiff fails to contradict the testimony of Defendant's expert, Elmer J.
19 Pellegrino, with any admissible evidence. (*See* Decl. of Elmer Pellegrino in Supp. of Mot. for
20 Summ. J. (ECF No. 40-3).) Pellegrino opined that "Deputy Carpenter's conduct accelerating his
21 patrol vehicle into the driver's side of [Plaintiff's] car was reasonable under the circumstances."
22 (*Id.* at ¶ 7.) He further stated that it his opinion that this response was proper due to the
23 "circumstance [Plaintiff] had created" and Defendant Carpenter "made the right choice in not
24 waiting to see if [Plaintiff] pointed a gun at him" as Defendant Carpenter "may not have had
25 time to react and things may have turned out much worse." (*Id.*)

26       Pellegrino also opined that the continued use of force by chasing Plaintiff, ordering him
27 to stop, grabbing him by the back of the shirt and forcing him to the ground was reasonable. (*Id.*
28 at ¶8.) According to Pellegrino "California Peace Officers Standards and Training (POST)

1  academies stress that taking a suspect to the ground front-first and placing a knee in the suspect's
2  back is an important and effective technique" in gaining control of a suspect who is fleeing or
3  evading arrest.  (*Id.* at ¶¶ 9-10.)

4  In his Opposition, Plaintiff attempts to claim that Defendant's own "Exhibit 5" to the
5  motion for summary judgment depicts a color photograph of Plaintiff "wedged into the driver's
6  seat due to a deployed airbag" which he claims is evidence that he could not have been reaching
7  for a weapon or even appear to be reaching for a weapon. (Pl.'s Opp'n at 3.)  As noted by
8  Defendant in his Reply, there is no "Exhibit 5" nor is there any such photograph submitted by
9  any party to this action in support of or opposition to the motion for summary judgment. (*See*
10 Def.'s Reply in Supp. of Mtn for Summ J (ECF No. 53) at 3.)  Plaintiff makes a similar assertion
11 regarding another color photograph that he claims is part of Defendant's Motion as "Exhibit 6."
12 (*See* Pl.'s Opp'n at 8.)  While these photographs are not part of Defendant's moving papers,
13 Plaintiff may be referencing photographs that he was shown during his deposition by counsel
14 for the Defendant.  Based on Plaintiff's deposition testimony it is not clear that these
15 photographs depict what Plaintiff claims in his Opposition or that they would be helpful to
16 Plaintiff.  The photographs shown to Plaintiff during his deposition have not been attached to
17 any of the pleadings related to the motion currently before the Court and therefore, they are not
18 part of the Court's record.

19 Plaintiff attempts to dispute Defendant Carpenter's assertion that he reasonably believed
20 Plaintiff had a weapon by referring to the reports of the other Sheriff Deputies who were part of
21 this incident.  Plaintiff claims that these reports contradict "Defendant's and his 'Expert's' 'gun
22 claims' in their entirety."  (Pl.'s Opp'n at 6-7.)  Plaintiff does not provide any further detail or
23 argument as to how he believes that these statements contradicts Defendant Carpenter's belief
24 that Plaintiff may have had a weapon.  *See* FED.R.CIV.P. 56(e) ("If a party fails to properly
25 support an assertion of fact or fails to properly address another party's assertion of fact as
26 required by Rule 56(c), the court may: ... (2) consider the fact undisputed for purposes of the
27 motion.").
28 / / /

1    Based on Plaintiff's own admissions and the entire record, the Court finds that there is
2 sufficient undisputed evidence before the Court that it was objectively reasonable for Defendant
3 to believe that Plaintiff posed an immediate threat to the safety of the officers or others when he
4 intentionally drove his patrol car into Plaintiff's car and after Plaintiff attempted to flee
5 following the crash.

6    3.    *Actively resisting or evading arrest*

7    It is undisputed that Plaintiff was actively evading arrest at the time these events occurred.
8 Plaintiff admits to fleeing from Sheriff Deputies who had pulled him over once and Plaintiff
9 admits that after he crashed his car in the concrete median of the freeway, he "jumped over the
10 median barrier" to the other side of the freeway. (Pl.'s Depo at 31:2-15; 42:11-24.)  Therefore,
11 the Court finds there is no evidence in the record to dispute Defendant's showing that Plaintiff
12 was attempting to flee from the officers and evade arrest.

13    The *Graham* factors "are not exclusive," and the court must "examine the totality of the
14 circumstances ... whether or not listed in *Graham*." *Glenn v. Washington County*, 673 F.3d 864,
15 872 (9th Cir. 2011) (citations omitted).  Here, Plaintiff claims that Defendant Carpenter grabbed
16 Plaintiff's shirt and "forcefully [shoved] him face-first onto the pavement."  (Pl.'s Opp'n at 7.)
17 There is no dispute that Defendant Carpenter took such action and placed his knee onto
18 Plaintiff's back to control Plaintiff.  (*See* Carpenter Decl. at ¶ 6.)   In examining the "totality of
19 the circumstances," it was undisputed that Plaintiff fled from Defendant Carpenter and jumped
20 over a median in the middle of a freeway. In *Scott*, the Supreme Court held that it is "appropriate
21 in this process to take into account not only the number of lives at risk, but also their relative
22 culpability." *Scott*, 550 U.S. at 384.  Here, it is undisputed that Defendant Carpenter believed
23 Plaintiff had a weapon and was on a freeway which could have put many bystanders lives at risk.
24 Defendant has submitted expert testimony, and the totality of the circumstances shows, that is
25 was objectively reasonable for Carpenter to push Plaintiff into the prone position to control him.
26 *Id.*

27    As to the claim by Plaintiff that he was hit in the back of the head by a gun after he had
28 complied with Defendant's orders, there is no evidence in the record to support this claim.

1  Defendant argues that Plaintiff has waived this claim and while far from clear, Plaintiff's appears
2  to indicate in his Opposition that he is not entirely waiving this claim only that he cannot be sure
3  if he was struck with a gun or a hard object. The allegation that is found in Plaintiff's First
4  Amended Complaint, which is being challenged by Defendant, states "Defendant then struck
5  Plaintiff on the head and face area with his handgun, a few times." (FAC at 13.) Plaintiff now
6  concedes that "he has no actual evidence that he was hit with a gun." (Pl.'s Opp'n at 8.)
7  However, Plaintiff maintains in his Opposition and Deposition that he was "hit by a hard object
8  that definitely was not a human hand." (*Id.* at 4.) For the purposes of this Motion, the Court will
9  consider Plaintiff's claims in the light most favorable to Plaintiff, the nonmoving party.

10  Defendant Carpenter maintains that while he "did not deliberately strike Gomez on his
11  head" but there may have been contact between "[Carpenter's] equipment and [Plaintiff's] head
12  while [Carpenter] was taking him to the ground." (Carpenter Decl. at ¶ 6.) In Plaintiff's
13  deposition, he describes being hit in the head while Defendant Carpenter was asking him
14  "where's the gun, where's the gun." (Pl.'s Depo at 50:1-7.) Even taking Plaintiff's claim that
15  he was hit in the head by Defendant Carpenter in the light most favorable to Plaintiff, Defendant
16  Carpenter's response "must be judged from the perspective of a reasonable officer on the scene,
17  rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Plaintiff points to no
18  evidence in the record to show how or why Carpenter, or a reasonable officer in his position,
19  would have any reason to believe that he was *not* dangerous, or that he was not carrying a
20  weapon. *Id.* at 396 (court must adopt "the perspective of a reasonable officer on the scene ... in
21  light of the facts and circumstances confronting him."); *Torres v. City of Madera*, 648 F.3d 1119,
22  1124 (9th Cir. 2011) (noting that where an officer's use of force is based on a mistake of fact,
23  the court must consider "whether a reasonable officer would have or *should* have accurately
24  perceived that fact."). Plaintiff's own deposition testimony shows that this claim of being hit
25  in the head occurred during the course of the arrest before Defendant Carpenter could ascertain
26  whether or not Plaintiff had a weapon and prior to Plaintiff being placed in handcuffs. Even if
27  Plaintiff was hit with something on his head, "a court must consider that the officer may be
28  reacting to a dynamic and evolving situation, requiring the officer to make split-second

decisions." *Bryan v. MacPherson*, 630 F.3d 805, 818 (9th Cir. 2010). Assuming Defendant Carpenter used additional force while effecting the arrest of Plaintiff, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (citation omitted.). It is undisputed that these events unfolded on the median of a freeway, Defendant Carpenter believed Plaintiff had a weapon, and the use of force occurred while Defendant and another officer were attempting to handcuff Plaintiff who had been evading arrest. Furthermore, the record reveals that there was no significant injury caused by the use of force striking the back of Plaintiff's head and therefore, the use of force was not unreasonable. *See Arpin v Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001) (finding that allegations of an injury without evidence or medical records is insufficient to establish an excessive force claim). Here, the Court finds that the record viewed in the light most favorable to Plaintiff demonstrates that the *Graham* factors weigh heavily in favor of Defendant in finding that the use of force was objectively reasonable under the totality of circumstances.

Defendant Carpenter's Motion for Summary Judgment as to Plaintiff's entire action is GRANTED.

## IV. Conclusion and Order

For all the reasons set forth above, the Court hereby GRANTS Defendant's Motion for Summary Judgment pursuant to FED.R.CIV.P. 56(c) (ECF No. 40).

The Clerk shall enter judgment for Defendant and shall close the file.

**IT IS SO ORDERED**.

DATED: April 29, 2013

_____
BARRY TED MOSKOWITZ, Chief Judge
United States District Court